Argued May 27, affirmed July 6, 1920.

# ENDICOTT, JOHNSON & CO. v. MULTNOMAH COUNTY.

### (190 Pac. 1109.)

**Taxation—Power is Limited to Persons, Property and Business Within Territorial Jurisdiction.**

1. The power of taxation though an inherent attribute of sovereignty is limited to the taxation of persons, property and business situated within the territorial jurisdiction of the state imposing the tax.

**Taxation—Personal Property—Follows Owner is Subject to Exception.**

2. The general rule that personalty follows the owner is invoked to determine the situs of personal property for taxation as a fiction to work out justice, and is not permitted to govern when justice does not demand that it should, and cannot prevail when inconsistent with express provisions of the statute.

**Taxation—"Personal Property"—Tangibles and Intangibles.**

3. Personal property for purposes of taxation includes intangibles as well as tangibles, so that not only money but promissory notes and accounts are subject to taxation.

**Taxation — Tangible Personalty — Nonresident Owner — Taxable Where Located.**

4. Tangible personal property may be taxed where it is physically located, even though the owner resides in another jurisdiction.

**Taxation—Bills and Notes—At Owner's Domicile in Another State not Taxable.**

5. Promissory notes owned by a resident of another state and held by him at his place of residence are not taxable within the state, though executed by state residents, though the paper on which the note was written is considered the note, so that it may be treated as tangible property.

> [On right of state to tax evidences of debt belonging to nonresidents, see note in 11 **Ann. Cas.** 739.]

**Taxation—Bills and Notes—Owner—"Business Situs" of Nonresident Within State may be Taxed.**

6. Where a nonresident has acquired a business situs within the state, that is, has carried on a business in the state more or less permanent in its nature, the property used in that business, including notes and accounts arising from such business transactions, becomes localized at the place where the business is conducted, and is there taxable.

Taxation—Nonresident Manufacturer, Represented in State Only by
Salesman, has no Business Situs.

7. A nonresident manufacturer, whose only agent in the state is
a salesman authorized only to take orders, which are filled directly
from the factory, and for which payment is made to the manufac-
turer out of the state, has no business situs within the state, so
as to render accounts and notes for sales within the state taxable.

Taxation—Bills and Notes of Nonresident not Taxable as "Personal
Property"—Statutes.

8. Section 3551, L. O. L., as amended by Laws of 1907, Chapter
268, making taxable personal property situated or owned within
the state, and section 3553, as amended by the same chapter, defin-
ing personal property to include debts due from solvent debtors,
when construed in the light of their legislative history, do not
make taxable notes and accounts due from resident debtors to a
nonresident of the state, who has no business situs within the state.

Taxation—Domicile of Owner—Prima Facie Situs of Personalty for
Taxation.

9. The domicile of the owner is *prima facie* the situs of personal
property for taxation, so that unequivocal words are ordinarily
needed in any tax legislation to separate the personal property
from the owner's domicile.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.

The assessor of Multnomah County made an as-
sessment against Endicott, Johnson & Company for
"money, notes and accounts" in the sum of $5,000,
and for "office furniture, library, instruments," in
the sum of $30. The board of equalization for
Multnomah County denied an application made by
Endicott, Johnson & Company for the cancellation
of the assessment, and Endicott, Johnson & Company
appealed to the Circuit Court. After a hearing the
Circuit Court ordered that the assessment be an-
nulled, and the county appealed to this court.

Endicott, Johnson & Company are manufacturers
of shoes, and have their factory and place of business
in Endicott, New York. W. H. Ambler is employed
by Endicott, Johnson & Company as a traveling

salesman. His territory includes all that part of Oregon which is west of Bend; and he visits merchants in that territory, displays samples, takes orders for shoes, and sends the orders to Endicott, New York. The orders are filled in Endicott, "billed on sixty days' time," and "the merchants remit directly to the house for the merchandise when the bills are due." Ambler maintains an office in the Worcester Block in Portland, and on the door appear the words "Endicott, Johnson & Company, Wholesale Shoes, W. H. Ambler, Agent." The furniture in the office is the personal property of Ambler; and, when asked why he caused the name of Endicott, Johnson & Company to appear on the door in addition to his own, he explained that—

"Endicott, Johnson is much better known than W. H. Ambler; and a merchant looking for the office of Endicott, Johnson & Company would look for their name, not for mine."

Ambler had no authority except to solicit and send orders for goods to Endicott, New York, where they were accepted or rejected, and, if accepted, were filled. Endicott, Johnson & Company do not maintain a branch office, or a place of business, or a warehouse in Oregon. Merchants buying goods remit to Endicott. There are no moneys deposited to the credit of Endicott, Johnson & Company in Oregon. On March 1, 1918, the date as of which the assessment was made, Endicott, Johnson & Company had no property physically located in Oregon. On that date, however, there were unpaid accounts due from Oregon merchants to whom Endicott, Johnson & Company had sold shoes, and possibly Endicott, Johnson & Company also had in their possession at

Endicott, New York, promissory notes given by Oregon merchants for shoes purchased by them.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George Mowry,* Deputy District Attorney.

For respondents there was a brief over the names of *Mr. F. M. Saxton, Mr. Sidney Teiser* and *Mr. J. F. Boothe,* with oral arguments by *Mr. Saxton* and *Mr. Teiser.*

HARRIS, J.—The county concedes that the assessment of $30 against Endicott, Johnson & Company on account of "office furniture, library, instruments," was properly set aside; but the annulment of the assessment of $5,000 on account of "money, notes, and accounts" is strenuously resisted. The county also concedes that the company had no money within its jurisdiction. The position of the county is that, inasmuch as Endicott, Johnson & Company had no money in Multnomah County, but did have notes and accounts arising out of sales made to Oregon merchants, it must be presumed that the assessment was not intended to cover money, but that it was designed to embrace only notes and accounts. For the purposes of this case, we shall assume, without deciding, that the word "money" appearing on the assessor's records may be ignored, and that the assessment was intended to cover, and that it does cover, nothing but notes and accounts.

It affirmatively appears from the evidence that the company had in its possession at Endicott, New York, promissory notes; but it does not clearly appear whether any of these notes were given on ac-

count of sales made in Oregon; and, moreover, the findings of the trial court, although indefinite in this respect, rather indicate that it was the opinion of the Circuit Court that the company did not have any notes signed by Oregon merchants. We shall not attempt to determine what the actual facts are, but we shall assume that the county's contention is correct, and that on March 1, 1918, Endicott, Johnson & Company did "own notes and accounts that were owing to them from residents of Multnomah County," and that these were the notes and accounts covered by the assessment, and that $5,000 was their aggregate value.

1. The power of taxation, although an inherent attribute of sovereignty, is necessarily limited to subjects within the jurisdiction of the state exercising the power. "These subjects," as stated in *State Tax on Foreign-held Bonds,* 15 Wall. 300 (21 L. Ed. 179), "are persons, property, and business." A state cannot tax a person or property or a business unless it first acquires jurisdiction over such person, property, or business. It is the prerogative of the legislature to decide what persons and what property shall be taxed; but legislation of a given state can be made to operate only upon persons and property within the sphere of its territorial limits. A tax imposed without jurisdiction over either persons or property is void: *St. Louis* v. *The Ferry Company,* 78 U. S. (11 Wall.) 423 (20 L. Ed. 192, see, also, Rose's U. S. Notes); *Tappan* v. *Merchants' National Bank,* 19 Wall. 490 (22 L. Ed. 189); *New York, L. E. & W. R. Co.* v. *Pennsylvania,* 153 U. S. 628 (38 L. Ed. 854, 14 Sup. Ct. Rep. 952); *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395 (51 L. Ed. 853, 27 Sup. Ct. Rep. 499 (affirming 115 La. 698 (9 L. R. A.

(N. S. 1240, 116 Am. St. Rep. 179, 39 South, 846);
*City of Augusta* v. *Kimball,* 91. Me. 605 (41 L. R. A.
475, 40 Atl. 666).

2. The maxim *mobilia sequunter personam* expresses a comprehensive and general rule applicable
to personal property, and, subject to a considerable
number of exceptions, this general rule is, for taxation purposes, invoked to determine the situs of personal property: *Callender Navigation Co.* v. *Pomeroy,* 61 Or. 343, 352 (122 Pac. 758). The rule *mobilia
sequunter personam* does not arise out of any requirements of the Constitution, but is a mere fiction
of the law, contrived for convenience and intended
to work out justice; and, therefore, it is not permitted to govern when justice does not demand that
it should do so, and it cannot prevail when inconsistent with express provisions of statute: *Board of
Assessors* v. *Comptoir National,* 191 U. S. 388 (48
L. Ed. 232, 24 Sup. Ct. Rep. 109, see, also, Rose's
U. S. Notes); *Union Refrigerator Transit Co.* v.
*Lynch,* 18 Utah, 378 (55 Pac. 639, 48 L. R. A. 790);
*Poppleton* v. *Yamhill Co.,* 18 Or. 377, 382 (23 Pac.
253, 7 L. R. A. 449).

3. Personal property includes intangibles as well
as tangibles, for not only money, but also promissory
notes, and accounts not represented by any written
evidence of indebtedness, are generally treated as
property, and therefore subject to taxation: 26
R. C. L. 138.

4. Notwithstanding the general rule expressed by
the maxim *mobilia sequunter personam,* it is now
firmly · established that tangible personal property
may be taxed at the situs where it is physically
located, even though the owner resides in another
jurisdiction. It is not necessary here to discuss the

extent or the limitations or the requisites of this established doctrine, for the reason that we are not called upon to decide any question concerning tangibles. While the assessment included the items of "furniture, library, instruments," and "money," it is conceded by the county that Endicott, Johnson & Company did not have any of these tangibles in Multnomah County; and, consequently, our attention will be confined to the two intangibles mentioned in the assessment,—notes and accounts.

If Endicott, Johnson & Company owned any promissory notes given for shoes sold to Oregon customers, the instruments were held in New York, and were not physically located in Oregon. There are cases in which statements may be found indicating a tendency to treat a promissory note, not merely as evidence of property, but as property itself, on the theory that the debt is inseparable from the paper which declares and constitutes it, and hence the paper is deemed to be so important an element of the value of what it represents as to make it analogous to tangible property: *Blackstone* v. *Miller,* 188 U. S. 189 (47 L. Ed. 439, 23 Sup. Ct. Rep. 277); *Wheeler* v. *Sohmer,* 233 U. S. 434 (58 L. Ed. 1030, 34 Sup. Ct. Rep. 607); *Walker* v. *Jack,* 31 C. C. A. 462 (88 Fed. 576).

5. Since the owners, Endicott, Johnson & Company, are domiciled in the State of New York, and the notes upon which they are assessed are held by them and are physically located in New York, it will not be necessary to decide whether, as was held in *Johnson* v. *City Council,* 3 Or. 13, the situs of a note for property taxation purposes is determined by the domicile of the owner regardless of the physical location of the paper evidencing the debt, or whether,

as was indicated in *Blackstone* v. *Miller* and kindred cases, a promissory note may be assimilated to tangibles on the ground that it not only declares the existence of the debt, but also constitutes the debt, and the paper itself being tangible, is capable of physical location.

6. If jurisdiction to levy a property tax is to be determined solely by the domicile of the owner, then the disputed assessment was void for the reason that the owners of the notes and accounts are domiciled in the State of New York. While it is settled as a matter of constitutional law that the situs of the debt or credit, for the purposes of property taxation, cannot arbitrarily be made to depend solely upon the domicile of the debtor, nevertheless a debt or credit may, in some circumstances, be given a situs for property taxation at a place other than the domicile of the owner. Although it is the general rule that the situs of intangibles cannot be assigned to a place other than the domicile of the owner, and although the domicile of the debtor cannot be made the single determining factor, nevertheless there are recognized exceptions to the general rule; as, where there is such a combination of circumstances as produces what is referred to in the books as a "business situs," as distinguished from the domicile of the owner. A precedent giving concrete illustration of the application of the doctrine of "business situs" is found in *Marshall-Wells Hardware Co.* v. *Multnomah County,* 58 Or. 469 (115 Pac. 150). It is impossible to frame an accurate formula which will include every case properly subject to the operation of the rule of "business situs," and exclude every case legally beyond its grasp, for each case is largely dependent upon its own facts. In an exhaustive and

well-considered note to *Liverpool & L. & G. Ins. Co.
v. Board of Assessors*, appearing in L. R. A. 1915C,
903, 925, the author states that:

"The term 'business situs,' frequently employed
by the courts to indicate a situs for credits apart
from the creditor's domicile, though not very precise
or accurate in its import, does suggest an indispensa-
ble condition of such a situs, that is, the necessity of
something like a general, or more or less continuous,
course of business or series of transactions within
the state, as distinguished from mere sporadic and
isolated transactions."

In *Johnson County* v. *Hewitt*, 76 Kan. 816 (93 Pac.
181, 14 L. R. A. (N. S.) 493), when referring to the
question of "independent situs" for notes and mort-
gages, the court says:

"Generally the element of separation from the
domicile of the owner and fairly permanent attach-
ment to some foreign locality should appear, together
with some business use of them, or some power of
managing, controlling, or dealing with them in a busi-
ness way."

Where property is used in a business carried on
in one state, and the owner of the property is domi-
ciled in another state, the property which is so used
in that business becomes localized at the place where
such business is conducted, acquires a "business situs,"
and is taxable at that "business situs"; and so, too,
credits arising out of that business, whether they be
accounts not evidenced by any writing, or whether
they be in the concrete form of notes, may by legisla-
tion be made taxable at such "business situs":
*Liverpool & L. & G. Ins. Co.* v. *Board of Assessors*,
221 U. S. 346 (55 L. Ed. 762, 31 Sup. Ct. Rep. 550,
L. R. A. 1915C, 903) ; *Assessors* v. *Comptoir National*,
191 U. S. 388 (48 L. Ed. 232, 24 Sup. Ct. Rep. 109) ;

*Goldgart* v. *People,* 106 Ill. 25; *In re Jefferson,* 35 Minn. 215 (28 N. W. 256).

7. In the instant case, however, we do not find any one of the several circumstances which usually appear, either singly or in combination, in adjudications where it has been held that intangibles had become separated from the domicile of their owner by reason of having been localized at a given "business situs" in a jurisdiction other than the domicile of the owner. There is no branch office or place of business in Oregon. There is no agent in Oregon, except a traveling salesman, and his only authority is to solicit orders. He does not receive payments, and he has no authority to make collections; payments are made by remittances to New York. No goods of any kind are stored in Oregon; but all orders are filled in New York, and the goods are shipped directly to the customer. Endicott, Johnson & Company are domiciled in New York; they have no property of any kind in Oregon. The record does not disclose whether Endicott, Johnson & Company is a corporation, or a partnership, or an individual operating under a trade name, although we infer from the printed briefs that the company is a partnership; but if the company is a corporation it cannot be compelled to pay corporation license fees in this state, for the reason that the business done by it in this state is pure interstate commerce: *Vermont Farm Mach. Co.* v. *Hall,* 80 Or. 308 (156 Pac. 1073); *Deardorf* v. *Idaho National Harvester Co.,* 90 Or. 425 (177 Pac. 33). If, as was done by Marshall-Wells Hardware Company (*Marshall-Wells Hardware Co.* v. *Multnomah Co.,* 58 Or. 469 (115 Pac. 150), Endicott, Johnson & Company had localized any part of their business in Oregon so as to create a "business situs" here, then not only the tangibles used here in such business, but

also the accounts and notes arising out of such business could be separated from the domicile of the owners, and be made liable for the payment of a property tax; but, as already stated, the circumstances attending the business transacted by Endicott, Johnson & Company did not create a "business situs" in Oregon, and consequently Multnomah County cannot lawfully levy a property tax on any notes or accounts held by Endicott, Johnson & Company. In other words, a statute designed to tax notes and accounts circumstanced as are the notes and accounts now under consideration would be unconstitutional because of a lack of jurisdiction over them.

8. While what we have already said is sufficient finally to dispose of this controversy, yet we may with propriety add that an examination of Sections 3551 and 3553, L. O. L., when made in the light of the history of these sections, will result in the conclusion that this legislation was not intended to cover notes and accounts like those owned by Endicott, Johnson & Company.

Originally, Section 3551, L. O. L., in part read as follows:

" * * all property, real and personal, within this state, not expressly exempted therefrom, shall be subject to taxation in the manner provided by law": Deady's Code, p. 893, § 1.

Although this section was amended in 1876 (Laws 1876, page 69), the quoted part of Section 3551 stood unchanged until 1907, when it was amended so as to read as it now appears:

" * * all personal property situated or owned within this state, except such as may be specifically exempted by law, shall be subject to assessment and taxation in equal and ratable proportion": Laws 1907, Chapter 268.

In its original form, Section 3553, L. O. L., so far
as it is material here, was worded as follows:

"The terms 'personal estate' and 'personal prop-
erty' shall be construed to include * * all debts due
or to become due from solvent debtors, whether on
account, contract, note, mortgage or otherwise. * * "
Deady's Code, p. 894, § 3.

This statute remained unchanged until 1907, when
it was amended so as to read as it now appears:

"The terms 'personal estate' and 'personal prop-
erty' shall be construed to include all things in action,
* * all debts due or to become due from solvent
debtors, whether on account, contract, note, mortgage,
or otherwise, either within or without this state;
* * "  Laws 1907, Chapter 268, § 3.

In 1890 this court, construing the statutes then in
force, and deciding a case where a person domiciled
in this state sent moneys into Washington territory
and caused them to be loaned there by his agents,
who took notes secured by mortgages on real prop-
erty situated there, and the agents retained the notes
and mortgages in their possession, held that this
state could not tax the money, notes, or mortgages,
basing the decision upon the wording of the statute:
*Poppleton* v. *Yamhill Co.*, 18 Or. 377 (23 Pac. 253,
7 L. R. A. 449).  It will be noted that Section 3553,
L. O. L., defines the "personal property" which, ac-
cording to Section 3551, L. O. L., shall be subject to
assessment and taxation; and, included in this defini-
tion of personal property are "debts due or to be-
come due from solvent debtors, whether on account,
contract, note, mortgage or otherwise, either within
or without this state."  It is obvious that the notes
and accounts for which Endicott, Johnson & Company
have been assessed are not situated in this state; nor
can it be said that they are owned in this state, be-

cause the owner is domiciled in New York.   See opinion of Mr. Justice HATCH in *People* v. *Barker,* 84 App. Div. 469 (83 N. Y. Supp. 33, 37), and see, also, note in 36 L. R. A. (N. S.) 297.

9. When, as already stated, we read these two sections of the Code in the light of their history and when we do this, remembering that the domicile of the owner *prima facie* furnishes the situs of personalty for the purposes of property taxation, and that unequivocal words are ordinarily needed in any legislation designed to separate the personal property from the domicile of the owner, it becomes manifest that the legislature did not attempt to tax notes and accounts arising out of business transactions like those involved here: *Johnson* v. *City Council,* 3 Or. 13; note in L. R. A. 1915C, 904, 910; 26 R. C. L. 287; *W. W. Kimball Co.* v. *Shawnee Co.,* 99 Kan. 302 (161 Pac. 644, L. R. A. 1917B, 1282); *Dallinger* v. *Rapello* (C. C.), 14 Fed. 32; *Bears* v. *Grand Rapids,* 129 Mich. 572 (89 N. W. 328).

The final order made by the Circuit Court annulling the assessment is affirmed.        AFFIRMED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., concur.