(84 App. Div. 469.)

### PEOPLE ex rel. ORINOKA MILLS v. BARKER et al., Com'rs of Taxes and Assessments.

(Supreme Court, Appellate Division, First Department. June 19, 1903.)

1. TAXATION—PROPERTY SUBJECT—PROPERTY WITHOUT STATE.

Tax Law (Laws 1896, p. 802, c. 908) § 11, provides that all the personalty of every corporation liable to taxation on its capital shall be assessed in the tax district where its principal office is located, and section 3 (Laws 1896, p. 797, c. 908) declares that all personalty situate or owned within the state is taxable. *Held*, that merchandise and materials belonging to a manufacturing corporation having its principal office in New York, but which materials are situate at the company's mills in another state, are not taxable.

2. SAME—INDEBTEDNESS.

Indebtedness due the corporation was taxable, irrespective of the residence of the debtors.

3. SAME—RETURN OF TAXPAYER, ETC.—SUFFICIENCY OF AVERMENTS.

The return of the taxpayer, a domestic corporation, averred that "the company claims that it is exempt from taxation in New York because its assets are out of the state, and are taxed in Pennsylvania, in which state its mills are located." Its petition for certiorari to review the action of the commissioners read, inter alia, "Though it appeared from said statement, and although the fact is and was that * * * all the assets of your petitioner were situate without the state of New York, being situate within the state of Pennsylvania, and there subject to assessment for taxation, and although assessments for taxation are and were paid thereon by your petitioner in said state of Pennsylvania," etc. It appeared that the corporation actually had on hand in cash certain money. *Held* not a sufficient averment that this money was in Pennsylvania, and there subject to taxation, to relieve it from taxation in New York.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of the Orinoka Mills, a domestic corporation, against Edward P. Barker and others, as commissioners of taxes and assessments, etc., to review the action of the commissioners in fixing the value of relator's property for taxation. From an order vacating the assessment against the capital and surplus of relator, the respondents appeal. Reversed.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

James M. Ward, for appellants.

Eldon Bisbee, for respondent.

INGRAHAM, J. The commissioners of taxes and assessments of the city of New York assessed the value of the capital stock of the relator, a domestic corporation, having its principal place of business in the city of New York, as subject to taxation for the year 1897. The relator applied to the commissioners to review this assessment, claiming that no part of its capital stock was within the state of New York and subject to taxation. Upon this application the commissioners fixed the value of the property of the relator subject to taxation at $25,399, whereupon this proceeding was instituted to review the action of the commissioners and to vacate the assessment. The

case was heard at the Special Term upon the petition and return, and it was held that the assessment was erroneous and illegal, and it was wholly annulled and vacated. From the return it appeared that the relator made a statement to the commissioners in relation to its property, and that statement was accepted by the commissioners, and upon it the assessment in question was made. From that statement it appeared—

| | | |
|---|---:|---:|
| That the corporation had machinery and fixtures as a part of its factory, located in the state of Pennsylvania, of the value of.. | | $ 77,688 36 |
| Cash ......... | | 7,066 84 |
| Merchandise and material at the mills....... | | 25,000 00 |
| Merchandise consigned ....... | $83,818 73 | |
| Less advances and indebtedness thereon....... | 73,358 78 | |
| | | 10,664 95 |
| Total ....... | | $120,420 35 |

That the only indebtedness of the company consisted of advances and indebtedness upon merchandise consigned, which was deducted from the value of such merchandise, leaving the net assets of the relator the amount above stated ($120,140.35), of which amount $77,688.36 was invested in machinery and fixtures in use at the relator's mills in Pennsylvania, and $25,000 in merchandise and materials in that state. There is no statement in this return to the tax commissioners as to the location of the cash or the consigned merchandise. The tax commissioners fixed the—

| | | |
|---|---:|---:|
| Total gross assets at....... | | $193,774 13 |
| Deducting 10 per cent. of capital stock....... | $10,000 00 | |
| Debts of corporation ....... | 73,353 78 | |
| Value of real estate in Pennsylvania....... | 77,688 36 | |
| | | 161,042 14 |
| Leaving the balance of the capital stock of the company taxable in this state ....... | | $ 32,731 99 |

And that the value of the relator's property subject to taxation was $25,399. The commissioners stated that they fixed it at that sum because an assessment of that amount had been imposed for the year before, which was not challenged. It is alleged in the petition that all of the assets of the relator were situate without the state of New York, and within the state of Pennsylvania, "and there subject to assessment for taxation, and although assessments for taxation are and were paid thereon by your petitioner in said state of Pennsylvania."

Section 11 of the tax law (chapter 908, p. 802, Laws 1896) provides, "All the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the tax district where the principal office or place for transacting the financial concerns of the company shall be," and it is conceded that the principal office for transacting the business of the relator was in the city and county of New York. Section 12 of the tax law provides that the capital stock of every company liable to taxation, with certain exceptions, and after deducting the assessed value of its real estate and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this state, shall be

assessed at its actual value. Under the provisions of the Revised Statutes in force prior to the enactment of the tax law, it was held that personal propery of a resident of this state, actually situated in another state, and taxable there, was not taxable here as a part of the resident citizen's personal property. People ex rel. Hoyt v. Com'rs of Taxes, 23 N. Y. 224. The language of the statute under which the tax was imposed in the case cited was:

"All lands and all personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, subject to the exemptions hereinafter specified."

And it was held that neither personal nor real property actually located outside of this state was taxable in this state, whether owned by a resident or a nonresident. The court say:

"Thus we have a system apparently symmetrical and complete, according to which all personal estate having an actual situs in this state is brought within the sphere of taxation, without regard to the domicile of the owner, with only special exceptions dictated by policy and justice. And if this be the rule of taxation where the situs of the thing to be taxed and the domicile of the owner are different, it is conceded that the opposite rule cannot and does not prevail. Proceeding on this rule, Louisiana and New Jersey very justly imposed a share of their public burdens on the property of the relator situated in those states. The state of New York will do the same thing in respect to citizens of those states having property here, but it is not so unjust to its own citizens as to load them with double burdens by proceeding on the opposite principle also."

And this case has been uniformly followed.

Upon the revision of the tax law (chapter 908, p. 797, Laws 1896, § 3), this provision was amended so as to read, "All personal property situated or owned within this state is taxable." It is a little difficult to see the object of adding the words "or owned" in the description of the property subject to taxation. It is possible, however, that it was intended to apply to a species of property that has no actual situs, such as credits or the like, but chattels or property having a defined situs is not owned in this state when it is actually located in a foreign state. It is taxable in the state in which it is actually located; and the intent which controlled in the Hoyt Case is no less apparent in this statute—that where personal property has an actual situs in another state, and thus becomes in that other state subject to taxation, it is not taxable in this state, although its owner is an actual resident here. It would follow that the merchandise and materials at the mills in Pennsylvania were not taxable.

The relator's return shows that they actually had on hand, in cash, $7,008.84. There is no statement that this money is not in this state, and a general statement that "the company claims that it is exempt from taxation in New York, because its assets are out of the state, and are taxed in Pennsylvania, in which state its mills are located," certainly cannot be construed to mean that the actual cash was in Pennsylvania, and was there subject to taxation. The petition presented to the court upon which this writ was based also refrains from making any express statement as to the actual location of this money. It is nowhere stated in the petition that the money is actually deposited in the state of Pennsylvania, so that it was there subject to taxa-

tion. The only allegation of the petition relating to this property is that "although it appeared from said statement, and although the fact is and was, that on said second Monday of January, 1897, all the assets of your petitioner were situate without the state of New York, and without the said city and county of New York, being situate within the state of Pennsylvania, and there subject to assessment for taxation, and although assessments for taxation are and were paid thereon by your petitioner in said state of Pennsylvania, the said commissioner," etc. There is here no express allegation that this money was actually within the state of Pennsylvania, or was there subject to taxation. And so in relation to the statement as to "merchandise consigned, less advances and indebtedness thereon." I assume this to be merchandise manufactured and owned by the relator, which has been consigned to others, less advances made by the consignees on account of such merchandise. The balance over and above the amount of indebtedness, being $10,664.95, would seem to be property of the relator owned in this state which is subject to taxation. That property which had been consigned would clearly not remain in the mills where it was manufactured, as in the statement made there is a distinction between the merchandise and materials at the mills and the merchandise consigned. The relator is a domestic corporation, and is taxable upon all property situated or owned within this state. Undoubtedly that would include indebtedness, wherever the situation of the debtors; and if the relator wished to be relieved from taxation as to property that it owned, but which, in consequence of its situation, was not subject to taxation, I think they were bound to make it clearly appear to the tax commissioners that, although the property was owned by the relator, it was not actually situated within this state, but was in a foreign state, and there subject to taxation. A mere statement that all of its assets were in another state was not sufficient to relieve it from taxation. People ex rel. United Verde Copper Co. v. Feitner, 54 App. Div. 217, 66 N. Y. Supp. 769, affirmed on opinion below in 165 N. Y. 645, 59 N. E. 1129.

It follows that the order appealed from should be reversed, and the property of the relator subject to taxation for the year 1897 fixed at the sum of $17,731.39, without costs on this appeal.

O'BRIEN and LAUGHLIN, JJ., concur.

HATCH, J. I agree with the prevailing opinion in this case, so far as it relates to the property assessed which is therein held to be properly taxable, but I am further of opinion that the item of $25,000 for merchandise and material at the mills should also be included as property subject to taxation. I assume, without deciding or expressing any opinion, as was assumed in People ex rel. Hoyt v. Com'rs of Taxes, 23 N. Y. 224, that the Legislature has the power to subject to taxation personal property owned by a resident of this state, whose actual situs is in another state. It is recognized as a general rule of law that personal property has no locality, and is subject to the law of the domicile of the owner. Its liability to taxation,

however, is not made to depend upon this rule. The power to tax personal property depends upon the terms of the statute authorizing it. In the Hoyt Case, supra, it was held not taxable because its actual situs was not within the state, and therefore it was not brought within the terms of the statute, and that to uphold the tax in that particular case would result in double taxation. This case was commented upon in Kelly v. Crapo, 45 N. Y. 86, 6 Am. Rep. 35, where the rule above announced was approved. The rule was again approved in People ex rel. Pacific M. S. Co. v. Commissioners, etc., 58 N. Y. 242. In People ex rel. Jefferson v. Smith, 88 N. Y. 576, it was held that mortgages situate without the state, in the hands of an agent of a resident owner, were not taxable under the doctrine announced in the Hoyt Case, supra; it being stated in the opinion therein that there was no more authority under the statute to subject such property to the burden of taxation than there would be to subject lands in another state to taxation herein. Since that decision was rendered the statute has undergone a change.

The history of legislation upon this subject, and the authorities construing the same, were very clearly and succinctly stated by Mr. Justice Rumsey in People ex rel. U. V. Copper Co. v. Feitner, 54 App. Div. 217, 66 N. Y. Supp. 769. It is therefore needless to restate it. A statement showing the difference in statutory authority is sufficient for present purposes. The statute in force at the time when the Hoyt Case, supra, was decided, read: "All lands and all personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation, subject to the exemptions hereinafter specified." 1 Rev. St. (1st Ed.) p. 387, pt. 1, c. 13, tit. 1, § 1. The present statute is contained in the tax law (section 3), and reads: ."All real property within this state and all personal property situated or owned within this state is taxable unless exempt from taxation by law." The words "or owned," it will be seen, have been added. The statute first provides for that property which is situated within the state, then it provides for that which is owned within the state, and both classes are made subject to taxation within the jurisdiction. It is quite apparent that this change in phraseology was intended to mean something, else the addition of the words "or owned" is meaningless. If it be limited to such personal property as is situated within the state, and ownership applied to it, then nothing is added to the statute by the amendment, and the words are surplusage, as such property was already embraced within the former statute, and is, in terms, embraced within the latter. Personal property of a nonresident owner, which has an actual situs within this state, is not owned here. The title is quite distinct from the situs, and rests in the nonresident owner, no matter where he be, and no one without authority from him can legally convey it away. Property situate in the state of Pennsylvania, the title to which is vested in a citizen of this state, is owned here, not only in a literal, but in a legal, sense. Ownership of property cannot be severed from the person in whom it is vested by any legal rule, no matter where it be situated; and such owner, in all law-abiding communities, can enforce his right thereto. The word "owned," in signification, em-

braces all of the property right which can be acquired therein, and title thereto is not dependent upon the place of its actual situs. It is not perceived why the legal sense which is attached to this word should be limited in scope, or should be given something less than its generally accepted meaning. On the contrary, it is evident that the Legislature intended to work a change in the rule governing the taxation of personal property. It had before it the decisions of the courts, holding that under the former statute only such personal property as was actually situate within the state, or such as had no established situs elsewhere and was owned here, could be taxed herein. Presumably it considered that personal property was held without the state by resident owners which escaped the payment of any tax, and it is not improbable that it considered it had been, or might easily be, sent into a foreign jurisdiction for the purpose of evading taxation. It would seem, therefore, that the new law indicated a clear intent to work this change; and, this being made plain, we are called upon to attach that meaning to the language used which is generally understood, and which the words aptly convey. There is no apparent reason for attaching a limited meaning thereto, nor any other, which I am able to perceive.

It was said by Mr. Justice Rumsey in U. V. Copper Co. v. Feitner, supra:

"The intention of the Legislature with respect to the taxation of personal property can only be ascertained by consideration of the statute upon the subject. An examination of the changes in this statute made from time to time shows quite clearly that the object of these changes has been to increase the jurisdiction of the assessors over personal property, and to include property which by the decisions of the courts had theretofore been excluded. This is plain from a comparison of the Revised Statutes with the law of 1883, which was undoubtedly passed to meet and overthrow the rule laid down in People ex rel. Jefferson v. Smith, supra, by the Court of Appeals."

This language received the sanction of a unanimous court, and the opinion was adopted by the Court of Appeals as its own. 165 N. Y. 645, 59 N. E. 1129. It is true that the question involved therein was the right to tax debts owing by a nonresident to a domestic corporation. I am unable, however, to see that this fact changes the rule to be applied.

By the provisions of section 11 of the tax law, all of the personal estate of every incorporated company liable to taxation is required to be assessed in the tax district where it has its principal office or place for transacting the financial concerns of the company. And by section 4 the terms "personal property" and "personal estate" are expressly defined, and these words are held to include chattels, as well as debts due from solvent debtors. The ownership is the same in both cases, and it is that property, thus defined, which is made subject to taxation, if its ownership be within this state. We therefore have presented a case where the relator is properly assessed within this taxing district, the property which it owns is subject to taxation, and the authority to tax is based upon the ownership of the property. Consequently it would seem to fall within the terms of the statute.

It is not made to appear that the merchandise at the mill is subject to any tax in the state of Pennsylvania, the statement of the petition in this respect being that the corporation is taxable in that state. It well may be, for it has real property within that jurisdiction. It does not say that it is taxable therein upon this item of property. I am of opinion, therefore, that this item was properly taxable within this jurisdiction; that it was properly included in the assessment; that therefore the order should be reversed, and the writ dismissed, with $50 costs.

PATTERSON, J., concurs.